**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 2 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

| | | |
|---|---|---|
| JANE ROE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 96-1086 |
| | ) | |
| CHEYENNE MOUNTAIN CONFERENCE | ) | |
| RESORT, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| ----------------------------- | ) | |
| | ) | |
| NATIONAL EMPLOYMENT LAWYERS' | ) | |
| ASSOCIATION, DISABILITY RIGHTS | ) | |
| EDUCATION AND DEFENSE FUND, | ) | |
| EMPLOYMENT LAW CENTER, | ) | |
| NEW YORK LAWYERS FOR THE | ) | |
| PUBLIC INTEREST, THE IMPACT FUND, | ) | |
| EQUAL EMPLOYMENT OPPORTUNITY | ) | |
| COMMISSION, | ) | |
| | ) | |
| Amici Curiae. | ) | |

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 95-WY-2152-CB)**

Craig M. Cornish (Melissa L. Phillips with him on the briefs), of Cornish & Dell'Olio, Colorado Springs, Colorado, for Plaintiff-Appellant.

Glenn H. Schlabs (Raymond M. Deeny and Martha E. Cox with him on the brief), of Sherman & Howard, Colorado Springs, Colorado, for Defendant-Appellee.

Paul D. Ramshaw (C. Gregory Stewart, General Counsel, Gwendolyn Young Reams, Associate General Counsel, and Vincent J. Blackwood, Assistant General Counsel, with him on the brief), Washington, D.C., for Amicus Equal Employment Opportunity Commission.

Douglas A. Hedin, Minneapolis, Minnesota, on the brief for Amicus National Employment Lawyers' Association.

Brad Seligman and Mari Mayeda, Albany, California, and Arlene Mayerson and Linda D. Kilb, Berkeley, California, on the brief for Amici Disability Rights Education and Defense Fund, Employment Law Center, New York Lawyers for the Public Interest, and The Impact Fund.

---

Before **KELLY, HOLLOWAY,** and **WEIS,**[*] Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

---

# I

Plaintiff-appellant Jane Roe (a pseudonym used for purposes of privacy) is an accounts manager for the defendant-appellee Cheyenne Mountain Conference Resort (hereinafter CMCR or simply defendant). CMCR employs approximately 500 people and, according to plaintiff, is used extensively by major corporations. In the summer of 1995, CMCR adopted a new Drug and Alcohol Testing Policy (the Policy). On July 7, 1995, CMCR's employees, including plaintiff, were given copies of the Policy and told that their

---

[*]Honorable Joseph F. Weis, Jr., United States Senior Circuit Judge for the Third Circuit, sitting by designation.

written consent to the Policy and their adherence to its requirements were mandatory for their continued employment.

Preceding its provisions on drug and alcohol testing, the Policy contained these provisions:

> The following rules on alcohol, drugs and illegal substances are the policy of CMCR. ***Adherence to these rules is a condition of employment:***
>
> 1. Employees are strictly prohibited from possessing, consuming, or being under the influence of alcohol during work hours or on company property.
>
> 2. Employees are strictly prohibited from possessing, consuming, or being under the influence of any illegal drugs, controlled substance, any prescribed or over the counter drug or medication that has been illegally obtained or is being used in an improper manner.
>
> 3. ***Employees must report without qualification, all drugs present within their body system [sic]. Further, they must remain free of drugs while on the job.*** They must not use, possess, conceal, manufacture, distribute, dispense, transport, or sell drugs while on the job, in CMCR vehicles or on CMCR property or to the property to which they have been assigned in the course of their employment. ***Additionally, prescribed drugs may be used only to the extent that they have been reported and approved by an employee supervisor*** and that they can be taken by the employee without risk of sensory impairment and/or injury to any person or employee.

I. R. 22 (emphasis added). (For ease of reference in the remainder of this opinion we will refer to the provisions in paragraph 3, above, as the "prescription drug disclosure provisions," even though the provisions require disclosure of all drugs, not just prescription drugs.)

The Policy provided further for drug and alcohol testing of employees in various

3

situations. Several of these do not concern us. Provisions for testing on reasonable cause to suspect an employee was under the influence of alcohol or drugs, for testing employees involved in accidents on the job, and for employees involved in "motorized vehicle incidents" have not been challenged. As it pertains to this lawsuit, the only significant aspect of the drug and alcohol testing under the Policy is a provision for random testing to which any employee might be subjected. The Policy does not state whether blood or urine testing is contemplated, nor how samples will be taken.

Plaintiff refused to sign the consent form. Alleging that some of the requirements of the Policy were so unreasonable and intrusive as to violate her legal rights, she instead initiated this action to enjoin its implementation in the District Court of El Paso County, Colorado on July 14, 1995. Plaintiff set out three claims in her initial pleading, which have remained essentially the same after later amendment. First, plaintiff alleged that the prescription drug disclosure provisions violated section 102 of the Americans With Disabilities Act (the ADA or the Act), 42 U.S.C. § 12112(d)(4), which prohibits a medical examination or inquiries as to whether an employee is an individual with a disability, unless shown to be job-related and consistent with business necessity.[1] Second, plaintiff alleged

---

[1]The applicable provision states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

4

that the prescription drug disclosure provisions and the requirement of submitting to random drug testing violated her right to privacy under state law. Third, she alleged that those same provisions of the Policy violated the state's public policy.

Informal discussions between counsel for the parties began almost immediately after suit was filed. These discussions were ultimately unsuccessful because the defendant rejected plaintiff's demand for attorney fees. Meanwhile, plaintiff had deferred pursuing immediate equitable relief since defendant had agreed to suspend implementation of the Policy pending the outcome of the litigation. So far as the record reveals, the Policy still has not been implemented. As the parties approached impasse in their discussions, defendant removed the action to the United States District Court for the District of Colorado.

Plaintiff had not filed a charge with the EEOC prior to commencing the instant suit in the District Court of El Paso County, Colorado on July 14, 1995. On August 21, 1995, defendant CMCR filed a notice of removal of this action to the United States District Court for the District of Colorado. Aplt. App. at 11. On August 30, 1995, CMCR moved to dismiss the complaint alleging, *inter alia*, failure to exhaust administrative remedies in the EEOC. Plaintiff then filed an EEOC charge and requested an immediate right to sue letter. The letter was issued three weeks later. Plaintiff then filed a motion for leave to amend the complaint to allege satisfaction of the EEOC requirements, which was granted over the defendant's objection. Plaintiff's First Amended and Supplemental Complaint was filed on

42 U.S.C. § 12112(d)(4)(A).

5

November 6, 1995 in the Colorado federal court. The parties filed cross-motions for summary judgment there.

## II

In resolving the cross-motions for summary judgment, the district court held that the prescription drug disclosure provisions violated the ADA because they constituted "disability-related inquiries." *Roe v. Cheyenne Mountain Conference Resort*, 920 F. Supp. 1153, 1154-55 (D. Colo. 1996). The judge said that defendant had not shown that the Policy is job-related and consistent with business necessity. He announced that he was granting summary judgment for plaintiff on the ADA claim, and denied defendant CMCR's motion for summary judgment on that first claim. *Id.* at 1156. He granted defendant's motion for summary judgment on the state law claims, relying principally on the opinion of our court in *Mares v. ConAgra Poultry Co.*, 971 F.2d 492 (10th Cir. 1992). Plaintiff had requested that the court certify the state claims to the Colorado Supreme Court or decline to exercise supplemental jurisdiction over them.

In post-judgment motions, both sides sought modification of the judgment and both asked for costs and fees. Plaintiff specifically asked for an injunction against enforcement of the prescription drug disclosure provisions. The judge refused to enjoin defendant, saying he was "confident" that CMCR would amend its Policy to conform to the court's summary judgment order. Order on Motions at 4, Aplt. App. at 204. This was in spite of the fact that plaintiff's second motion to amend the judgment had shown not only that defendant had

6

failed to amend the Policy some forty days after the judgment, but also that in response to an inquiry from plaintiff's counsel, defendant's counsel stated that the order did not require compliance. The district judge denied plaintiff's request for attorney fees, stating that an award was clearly discretionary under the ADA, and that he refused to award fees because he did not believe the violation was intentional since the issue was "novel," as Roe's attorney stated, and because plaintiff had increased the cost of the litigation by pursuing "additional and unnecessary" claims. Aplt. App. at 203.

### III

We will first address three arguments raised by defendant CMCR which it contends are jurisdictional in nature. Defendant has not taken a cross-appeal from the district court's judgment. Therefore, arguments which would lead to the vacation of the judgment below and the partial relief awarded to the plaintiff may not be heard, *Housing Authority of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1195 (10th Cir. 1991), unless they are jurisdictional, *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1380 (10th Cir. 1989). We conclude that none of the arguments presented by defendant demonstrates a lack of jurisdiction in the district court.

### A

First, defendant contends that the district court lacked jurisdiction because the EEOC issued its right to sue letter prematurely. The statute provides that the EEOC shall issue a right to sue letter if within 180 days from the filing of the charge the EEOC has not either

7

dismissed the charge, entered into a conciliation agreement, or filed a civil action itself. 42 U.S.C. § 2000e-5(f)(1).[2] As we have recited above, here the plaintiff did not file a charge with the EEOC until after having filed suit. When she did file her EEOC charge she also requested issuance of a right to sue letter immediately, a request which the agency promptly granted.[3] By regulation, the Commission has provided that a district director may issue a right to sue letter before 180 days have elapsed upon a determination that it is probable that the agency will be unable to complete its administrative processing of the charge within the 180 day period. 29 C.F.R. § 1601.28(a)(2) (1996).

Defendant argues that this regulation is invalid, being inimical to the intent of Congress, which defendant asserts was to foster conciliation by establishing an absolute bar to suit within 180 days after filing the EEOC charge. The authorities are not in accord on the validity of the regulation. Two circuits have upheld the regulation. *Sims v. Trus Joist MacMillan*, 22 F.3d 1059 (11th Cir. 1994); *Bryant v. California Brewers Ass'n*, 585 F.2d 421, 424 (9th Cir. 1978), *vacated on other grounds*, 444 U.S. 598 (1980).[4] A few district

---

[2]The procedures of Title VII apply under the ADA. 42 U.S.C. § 12117(a).

[3]Defendant raises no issue regarding the fact that plaintiff filed her suit before filing her EEOC charge. In analogous circumstances other courts have held that jurisdictional prerequisites may be satisfied after commencement of the action. *See, e.g., Matthews v. Diaz*, 426 U.S. 67, 75 (1976). Therefore, we believe that the filing of this action before having filed with the EEOC no longer presents a jurisdictional problem.

[4]The Ninth Circuit adhered to its holding in *Bryant* in two later cases, *Brown v. Puget Sound Elec.*, 732 F.2d 726, 729 (9th Cir. 1984), and *Saulsbury v. Wismer and Becker, Inc.*, 644 F.2d 1251, 1257 (9th Cir. 1980).

courts have held the regulation invalid. *See Pearce v. Barry Sable Diamonds*, 912 F. Supp. 149 (E.D. Pa. 1996) (questioning validity of the regulation and collecting cases).

Because the EEOC did issue a right to sue letter, we conclude that defendant's challenge does not go to the jurisdiction of the district court. We have previously referred to the requirement of exhaustion of EEOC procedures in private employment cases as jurisdictional. *Jones v. Runyon*, 91 F.3d 1398, 1399-1400 & n.1 (10th Cir. 1996), *cert. denied*, 117 S. Ct. 1243 (1997). Following the holding of the Supreme Court in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), however, we have regarded Title VII's *timeliness* requirements as being in the nature of statutes of limitations and thus subject to waiver or forfeiture, rather than being jurisdictional. *Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996).

In accord with that view, we believe that the allegedly premature issuance of the right to sue letter in this case is, at most, an affirmative defense which the defendant has waived by failing to take a cross-appeal. Accordingly, we do not reach the issue of the validity of the regulation under which the agency issued the right to sue letter before the expiration of 180 days.

**B**

Defendant also contends that federal jurisdiction is lacking because Roe has no standing to pursue an ADA claim. This is so, defendant argues, because Roe has not shown that she is a person with a "disability" as that term is defined in the Act. This argument has

no merit. The argument is miscast because it actually does not go to plaintiff's standing, and the particular challenge plaintiff has brought does not require her to meet the statutory definition of a person with a disability.

First, whether a plaintiff suing under the ADA comes within the definition of a person with a disability is simply not a question of standing but of whether an essential element of the claim can be established. Standing concerns whether the plaintiff "is entitled to have the court decide the merits of the dispute or of particular issues." *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). In other words, "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring this suit," which requires that the plaintiff show that she has a personal stake in the litigation. *Raines v. Byrd*, 117 S.Ct. 2312, 2317 (1997). Thus,

> [a] plaintiff has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision."

*Colorado Supreme Court*, 87 F.3d at 1164. Plaintiff has sufficiently alleged each of these elements.

Second, plaintiff's ability to maintain the particular ADA claim she has alleged does not require her to prove that she is an individual with a disability. As the district judge aptly observed, adopting defendant's position would defeat the very purpose of prohibiting disability related inquiries: "It makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a

10

disability." Aplt. App. at 205.  We also agree with the district court's reasoning that this

common sense rejection of defendant's argument is consistent with the statutory language:

> The ADA explicitly prohibits employers from making disability-related inquiries of employees, unless the inquiry is job-related or consistent with business necessity.  42 U.S.C. § 12112(d)(4)(A).  This provision applies to all employees.  Unlike suits based on a failure to provide a reasonable accommodation, this provision is not limited to qualified individuals with disabilities.  *Cf.* 42 U.S.C. § 12112(b)(5)(A).

*Id.*[5]

Defendant further argues that plaintiff lacks standing because she faced no real or

immediate threat of injury due to the fact that defendant suspended enforcement of the policy

pending the district court's determination of the controversy.  This argument does indeed

address one of the elements of standing, but we believe that plaintiff has at all times been

threatened with injury in fact.  We note that this argument is essentially the same as

defendant's third purportedly jurisdictional argument, which is that jurisdiction is lacking

because the controversy is moot.  We reject both of these arguments.  It is well settled that

voluntary cessation of illegal conduct by itself does not make the case moot.  *United States*

*v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).  As will be made clear in discussing the issues

raised by the plaintiff-appellant in this appeal, we believe that under the particular

---

[5]We need not and do not decide whether the ADA provides a cause of action to an unsuccessful job applicant who has been subjected to a prohibited inquiry.  *See Griffin v. Steeltek, Inc.*, 964 F. Supp. 317 (N.D. Okla. 1997) (holding that the ADA does not provide a right of action for an unsuccessful job applicant subjected to a prohibited inquiry).  We hold only that a present employee may sue for injunctive relief from such a prohibited inquiry, as is the case here.

11

circumstances presented here, the controversy was not mooted. Defendant's voluntary suspension of its unlawful policy did not completely remove the threat of injury; consequently plaintiff's standing is unaffected by defendant's suspension of the Policy.

In sum, the arguments made by defendant do not show a lack of jurisdiction in the district court.

**IV**

Plaintiff contends that the district court abused its discretion in denying her request for injunctive relief. In granting summary judgment for plaintiff and holding that the prescription drug disclosure requirements of defendant's Policy violated the ADA (to which no challenge was made by a cross-appeal), the district court made no reference to plaintiff's prayer for an injunction. On plaintiff's motion to amend the judgment, the district judge responded to the injunction request but declined to enjoin the defendant, remarking that he was "confident" that the defendant would amend the Policy to conform to his ruling that it violated the ADA.

The power to use injunctive relief to enforce the provisions of the ADA is granted by section 107 of the Act, 42 U.S.C. § 12117(a), which provides that the "powers, remedies, and procedures" of Title VII of the Civil Rights Act of 1964 apply under the Act. Injunctive relief in Title VII cases is authorized when the court finds that the defendant "has intentionally engaged in or is intentionally engaging in an unlawful employment practice . . . ." 42 U.S.C. § 2000e-5(g). Thus, we must first decide if the defendant

12

"intentionally engaged in" an unlawful employment practice within the meaning of this statute.

Congress' decision to incorporate in the ADA the remedies and procedures of Title VII cases is a clear indication, we think, that the statutory intent requirement for injunctive relief should be applied in harmony in cases under the two acts. Under Title VII, the intent which must be shown as a basis for injunctive relief is merely the intent to do the act which has discriminatory effect; it is not necessary for the plaintiff to show that the defendant intended to discriminate. It is enough to show that "the practice was followed deliberately, not accidentally." *Jones v. Lee Way Motor Freight, Inc.*, 431 F.2d 245, 250 (10th Cir. 1970); *accord Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 374 n.7 (5th Cir. 1981); *see also* 5 Lex K. Larson, *Employment Discrimination* § 90.01 at pp. 90-05-90-06 & n.14 (2d ed. 1997) (collecting similar holdings of other circuits). We think it clear that this intent requirement is satisfied here. Defendant's argument that the violation was not intentional fails to address the applicable definition of intent; instead, defendant argues as if intent to violate the law were required. This argument is unavailing. Thus we conclude that the district court was clearly given discretionary power to issue an injunction. Hence we will consider whether the court abused its discretion in denying injunctive relief.

We review a denial of injunctive relief for abuse of discretion. *Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 468 (10th Cir. 1992). The discretionary decision is "not left to a Court's 'inclination,' but to its judgment; and its judgment is to be guided by sound

legal principles." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975). The court's discretion is to be exercised in light of the purposes of the statute on which plaintiff's suit is based. *See id.* at 417 (Title VII); *Atchison, T. & S. F. Ry. v. Lennen*, 640 F.2d 255, 258 (10th Cir. 1980) (Revised Interstate Commerce Act case).

The most important factor for the district court to consider is whether the facts indicate a danger of future violations of the Act:

> The purpose of an injunction is to prevent future violations . . . . [T]he moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

*United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

The district court concluded that the prescription drug disclosure provisions of the Policy violated the ADA, and we agree. Defendant has not cross-appealed that holding, but has continued to defend the Policy indirectly by its arguments, discussed *supra*, that jurisdiction is lacking. Defendant vigorously defended the Policy below, one argument being that the Policy interdicted only prescription medication that is illegally obtained or improperly used. The judge said that CMCR "mischaracterizes its policy," noting that "[t]he policy provides that 'prescribed drugs may be used only to the extent that they have been reported and are approved by an employee supervisor.'" *Roe*, 920 F. Supp. at 1154-55.

14

Although defendant voluntarily "suspended" enforcement of the Policy at the commencement of the litigation, defendant has never revoked the offending provisions, despite its inability to formulate a plausible response to the district judge's straightforward statutory analysis showing that the provisions violate the Act.

Significantly, defendant refused to revoke the offending provisions even after the district court held them unlawful. In a letter responding to an inquiry from plaintiff's counsel concerning whether the Policy had been amended, defendant's counsel stated: "[T]here is no court order requiring any compliance in any way. Judge Brimmer merely stated we could implement our Policy at any time and that his ruling was very limited. Perhaps you should re-read the decision." Aplt. App. at 197.[6] We are mindful that this was post-judgment conduct, brought to the district court's attention in plaintiff's motion to amend the judgment under Fed. R. Civ. P. 59, and that rulings on such post-judgment motions are also within the court's sound discretion. We conclude, nevertheless, that this defiant hostility to amending the Policy indicated "some cognizable danger of recurrent violation," *W.T. Grant*, 345 U.S. at 633, and that appropriate enforcement action by the court was required. The First Circuit has held that injunctive relief should be upheld "because it flows ineluctably" from a ruling

---

[6]We have carefully studied Judge Brimmer's decision. He unambiguously held that the prescription drug disclosure provisions violated the ADA in the absence of any showing that the provisions were job-related and consistent with business necessity, a showing that defendant has never attempted to make. We are in complete agreement with Judge Brimmer on this point.

that a challenged policy violates Title VII. *E.E.O.C. v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 608 n.16 (1st Cir.), *cert. denied*, 116 S. Ct. 65 (1995).

We hold that it was an abuse of discretion to deny an injunction. We reverse that ruling and remand for the district court to formulate an appropriate injunctive order.

## V

We next consider plaintiff's contention that the district court abused its discretion in denying her an award of attorney fees for her success in challenging the prescription drug disclosure requirements as ADA violations. In considering plaintiff's request for attorney fees, the district court first concluded as a matter of law that the statutory language was "clearly permissive." Aplt. App. at 202. The judge then said that he would not award fees because the issue under the ADA was "novel," the violation was not knowing or purposeful, and plaintiff had increased the cost of the litigation by pursuing "additional and unnecessary" claims. *Id*. at 203.

We review the district court's decision for abuse of discretion. *Homeward Bound, Inc. v. Hissom Memorial Center*, 963 F.2d 1352, 1355 (10th Cir. 1992). "However, a district court's statutory interpretation or legal analysis which provides the basis for the fee award is reviewable de novo." *Id*. We feel that none of the reasons given by the district court justifies complete denial of attorney fees to plaintiff. The district court abused its discretion and we reverse and remand for determination of a reasonable award of attorney fees and costs.

16

## A

Our analysis begins with the statute which authorizes an award of fees. The relevant section of the ADA provides:

> In any action . . . commenced pursuant to this chapter, the court . . . in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . . .

42 U.S.C. § 12205. Both parties assert that Congress intended this fee provision to be construed as the fee-shifting provisions of other major civil rights legislation have been construed.[7] We are presented no argument, and we fail to see the basis for any argument, that this plaintiff proceeding under the ADA should be treated any differently from a plaintiff claiming a fee award under Title VII or section 1988.

The primary principle which we must apply is that a "prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The district court's statement that a fee award under the ADA is "clearly permissive" fails to acknowledge this well established cornerstone of federal attorney fees policy, and we disagree with the district judge's view on

---

[7]We have previously held that the standard for fee awards under 42 U.S.C. § 1988 is also to be applied to cases under Title VII. *Griffith v. Colorado*, 17 F.3d 1323, 1328 (10th Cir. 1994). *Cf. Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (similar language in fee-shifting provision of Copyright Act should be construed as permitting awards to successful plaintiffs and successful defendants on evenhanded basis rather than as implementing the dual standard applicable under the various civil rights statutes; the factors which justify the dual standard under the civil rights statutes are not present with the Copyright Act).

this point. However, although the judge's conclusion apparently rested on erroneous legal analysis, we must review his decision to determine if it should be affirmed on other grounds.

Defendant CMCR argues that plaintiff was not a prevailing party within the meaning of the statute and cases interpreting similar provisions of other civil rights laws. This is so, defendant contends, because plaintiff is not entitled to enforce any "judgment, consent decree, or settlement" against CMCR and no material alteration of the parties' legal relationship has occurred, citing *Farrar v. Hobby*, 506 U.S. 103 (1992). Appellee's Brief at 29-30. We disagree. In light of our holding in Part IV that plaintiff should have been granted injunctive relief, which will be entered on remand, it is clear that plaintiff will attain more than a mere "judicial pronouncement that the defendant has violated [the law], unaccompanied by an enforceable judgment on the merits . . . ." *Farrar*, 506 U.S. at 112. Consequently plaintiff likewise should have been awarded attorney fees and costs.

As noted, defendant CMCR contends that the district court properly denied injunctive relief because CMCR had voluntarily suspended the Policy before judgment. CMCR then maintains that plaintiff is not a prevailing party because no injunction issued, relying on this language from *Farrar*:

> [A] judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party. Of itself, "the moral satisfaction [that] results from any favorable statement of law" cannot bestow prevailing party status. No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant.

*Farrar*, 506 U.S. at 112-113.

Here, however, plaintiff was denied an enforceable order only because the court believed, erroneously we have noted, that defendant would in good faith rescind the offending provisions.  Even if defendant had done so, there could be no doubt that plaintiff's suit would have "'affect[ed] the behavior of the defendant toward the plaintiff.'"  *Id.* at 110 (quoting *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)).  *See Cummins v. Campbell*, 44 F.3d 847, 854 (10th Cir. 1994) (plaintiffs were prevailing parties as to some of the relief requested when defendants' decision to show the controversial film *The Last Temptation of Christ* was in response to plaintiffs' suit; filing of the suit acted as a "salutary catalyst" to cause the change in defendants' behavior); *Beard v. Teska*, 31 F.3d 942, 951-52 (10th Cir. 1994) (plaintiff is prevailing party if litigation was substantial factor in prompting defendant to change its conduct and change was required by law).  Here we are reversing the denial, and are ordering the grant of injunctive relief, Part IV, *supra*, and thus within the holding of *Farrar*, 506 U.S. at 112, plaintiff is obtaining, as she should have been awarded below, "an enforceable judgment on the merits" to be fashioned by the district judge.  Thus CMCR's reliance on *Farrar* as a basis for defending the denial of attorney fees and costs is misplaced.

We turn now to other reasons given for denying an award of fees and costs.

**B**

The district court's denial of fees cannot be sustained on the ground that the issue presented under the ADA was "novel," as the judge suggested, and defendant makes no effort

19

to defend the decision on this basis. In the first place, although there may have been no prior judicial decisions on the precise issue, the issue was not novel in the sense of being unusually difficult or esoteric. To the contrary, the district court apparently found the analysis of the issue under the Act to be quite straightforward, which is certainly how we see it.

We need not quibble about this concept of novelty, however. Even if the issue were novel, that is not a valid basis for denying an award of attorney fees. Indeed, until relatively recently that would have been acknowledged as a permissible ground for *increasing* a lodestar fee by applying a multiplier.[8] *See, e.g., Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524, 1531 (11th Cir. 1983). The reasoning supporting this practice was rejected by the Supreme Court in *Blum v. Stenson*, 465 U.S. at 898-99, on the basis that the novelty of the issue will be reflected in the lodestar fee, either in the hours required to litigate the issues, or, in the case of an attorney who is able to handle such an issue with unusual efficiency due to expertise in the general area, in the hourly rate. Thus nothing in *Blum* or any other authority of which we are aware supports denial of a fee award on the basis of novelty of the issue.

---

[8]A "lodestar" fee is the preliminary calculation to be made by the district court and is the product of the reasonable hourly rate set by the court multiplied by the number of hours reasonably necessary for the case. The lodestar figure may be adjusted to suit the particular circumstances of the case, especially where the degree of success achieved is exceptional. *See Blum v. Stenson*, 465 U.S. 886, 899 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).

20

In denying a fee award to plaintiff the district court also referred to the lack of any indication that the defendant had intended to violate the Act:

> The Court does not believe that the Resort knowingly or purposefully violated the ADA. . . . Because the legal issue was novel, the Resort could not rely on judicial precedent when drafting its policy.
>
> This case differs from a § 1983 action, where a defendant intentionally violates a clearly established right. The resort's actions were, at most, negligent.

Aplt. App. at 203.

These factors do not amount to special circumstances which would render a fee award unjust. Instead, "the alleged special circumstances amount to no more than assertions that the [defendant] acted in good faith, a ground overwhelmingly rejected by the courts." *Wilson v. Stocker*, 819 F.2d 943, 951 (10th Cir. 1987).

The final reason given by the district court for denying fees and costs to plaintiff, and urged by defendant on appeal, is her unsuccessful pursuit of her state law claims. We must also reject this ground. It is well settled that pursuit of unsuccessful claims may, in some circumstances, justify reducing the fees to be awarded. *See Hensley*, 461 U.S. at 438-440; *Ramos v. Lamm*, 713 F.2d 546, 556 (10th Cir. 1983). In the circumstances here, we believe it was an abuse of discretion to deny any recovery of fees and costs because the state claims were raised. Plaintiff was successful on her ADA claim. We conclude that the purposes of the ADA were subverted by denying fees to plaintiff on the basis that she also raised claims under state law which failed.

21

In sum, we reverse the district court's order denying attorney fees and costs to plaintiff and remand for further proceedings. We leave it to the discretion of the district court in the first instance to apply the teachings of cases such as *Hensley* and *Ramos* in determining the amount of fees to be awarded. In determining whether the hours spent by plaintiff's counsel were reasonably necessary in the litigation, the district court may also consider, in his discretion, whether the plaintiff's decision to bypass the EEOC initially increased the cost of the litigation unnecessarily.

In *Moteles v. University of Pennsylvania*, 730 F.2d 913, 917 (3d Cir. 1984), the court said that "premature resort to the district court should be discouraged as contrary to congressional intent. The preference for conciliation as the dispute resolution method in employment discrimination proceedings should not be undermined by a party's deliberate by-pass of administrative remedies." In addition, the record reveals that the main obstacle to reaching a settlement within a few weeks after suit was filed was the parties' disagreement over whether the plaintiff was entitled to attorney fees in general and specifically over the amount that would have been appropriate. It appears that the parties were quite close to a compromise on an amendment to the policy statement when the fee discussions derailed further productive settlement talks. The district court should conduct a hearing to determine whether either or both parties bear responsibility for the delay in resolving this case and take that factor into account in determining the fee that would be appropriate in the circumstances.

Plaintiff has requested an award of fees and costs for this appeal. Under all the circumstances, *see Iqbal v. Golf Course Superintendents Ass'n*, 900 F.2d 227, 229-30 (10th Cir. 1990) (fees may be awarded for work on appeal from fee award on a case-by-case basis), including plaintiff's success on the merits of her ADA appeal by obtaining injunctive relief as well as on the attorney fees issue, we believe that an award of appellate fees and costs is appropriate under 42 U.S.C. § 12205. On remand the district court will determine the appropriate amount of fees and costs to be awarded for this appeal. *Id.* In doing so, the district judge should consider again the circumstances which will be developed at the hearing discussed above on the matter of responsibility for delays in resolving the case.

## VI

### A

The ADA claim was just the first of three claims asserted by plaintiff's amended complaint. In her second and third claims, to which we now turn, plaintiff relied on state law. In each of these two state law claims she challenged not only the prescription drug disclosure provision, which was the sole subject of her ADA claim, but also the Policy's provisions for random drug testing and its ban on the use of non-prescription drugs.

The plaintiff's second claim alleges that the drugs in a person's system, especially those prescribed by a physician, are "highly private facts," the forced disclosure of which would be especially offensive to a reasonable person, and that such facts are not the legitimate concern of the public. Aplt. App. at 19. She avers that the prescription drug

23

disclosure provisions and the random drug testing provisions of the Policy intrude on her privacy and dignity. She bases this claim, *inter alia*, on the *Restatement (Second) of Torts* § 652B (1977), which defines the tort of unreasonable intrusion on privacy. Her brief argues that the Policy's ban on the use of non-prescription drugs is also a violation of this right of privacy. Appellant's Brief at 28-31.

The plaintiff's third claim alleges a violation of public policy. Like the invasion of privacy claim, this claim addresses both the prescription drug disclosure provisions and the random drug testing provision. The public policy theory is not developed in detail in plaintiff's briefs, but it appears plaintiff argues for an extension of what has been recognized as the public policy exception to the doctrine of employment at will, which has been recognized in Colorado and several other states in wrongful discharge cases.

The district court held that the prescription drug disclosure provisions did not violate plaintiff's common law right of privacy, relying essentially on our opinion in *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 496 (10th Cir. 1992). The district judge also held that plaintiff had no right of action under the general theory of violation of Colorado public policy. The judge did not address plaintiff's contention that the random drug testing provision of the Policy violated her rights under state law, nor did he expressly address plaintiff's claim that the Policy's apparent prohibition on the use of non-prescription drugs violated her right to privacy under Colorado law.

Our standard of review of orders granting summary judgment is well established. Our review is *de novo* and we apply the same standard of Fed. R. Civ. P. 56(c) as the district court does. *Mares*, 971 F.2d at 494. We view the evidence and make all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Id.*

**B**

We first address plaintiff Roe's claim that CMCR's prescription drug disclosure provisions, the random drug testing provisions, and the ban on the use of non-prescription drugs in its Policy violate Colorado public policy. She argues that Colorado common law has recognized several public policy duties which employers owe to employees, citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109-110 (Colo. 1992). Appellant's Brief at 27 n.13.

The public policy theory relied on was developed as an exception to the general rule in Colorado of employment for an indefinite duration being terminable at will. *Id.* at 108. *Lorenz* noted that *Cronk v. Intermountain Rural Electric Ass'n*, 765 P.2d 619 (Colo. App.), *cert. denied* (Colo. 1988), had recognized an expansion of the public policy exception to the employment at-will doctrine. *Lorenz*, 823 P.2d at 108. A claim based on this exception must be established by showing that the employee refused to carry out an order violative of a specific statute, whose terms are more than a broad and general statement of policy, and that the employee was discharged as a result of refusing to perform the act ordered by the employer. *Lorenz*, 823 P.2d at 108; *Cronk*, 765 P.2d at 622.

*Lorenz* held that a cause of action under the public policy exception to the at-will employment doctrine is cognizable in Colorado. *Lorenz*, 823 P.2d at 108. Under this theory, an at-will employee will establish a *prima facie* case for wrongful discharge by presenting evidence that the employer directed the employee to perform an illegal act as part of the employee's work-related duties or prohibited him from performing a public duty or exercising an important job-related right or privilege; that the action directed by the employer would violate a specific statute on the public health, safety or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or his right or privilege as a worker. The plaintiff must also show that the employee was terminated as the result of refusing to perform the act directed by the employer, and that the employer was aware or reasonably should have been aware that the employee's refusal to comply with the employer's order was based on the employee's reasonable belief that the action ordered was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker. *Id.* at 109. The later Colorado decision in *Rocky Mountain Hospital & Medical Service v. Mariani*, 916 P.2d 519, 523-24 (Colo. 1996), followed the principles of *Lorenz* outlined above.

We are persuaded that the district court correctly granted summary judgment for the defendant on plaintiff Roe's public policy claim as a basis for challenging the prescription drug disclosure provisions. Roe has not shown that the public policy on which she bases her claim is one grounded on a specific statute relating to the public health, safety or welfare or

26

would undermine a "clearly expressed public policy" recognized in Colorado that would prohibit the use of the prescription drug disclosure provisions. *Martin Marietta Corp. v. Lorenz,* 823 P.2d at 109. Additionally we note that plaintiff Roe has not argued that defendant CMCR was aware or reasonably should have been aware that its Policy would violate her rights. Appellant's Brief at 27-29.

In sum we uphold the grant of summary judgment for defendant CMCR on the public policy claim asserted by plaintiff Roe as a basis for her challenge to the prescription drug disclosure provisions, the random drug testing provisions, and the ban on the use of non-prescription drugs.

## C

Plaintiff Roe further asserts a state law claim of her right of privacy as a basis for challenging the prescription drug disclosure provisions, the random drug testing provisions, and the ban on the use of non-prescription drugs of CMCR's Policy. Because plaintiff Roe's arguments have shown a substantial basis for the possibility that the Colorado courts would uphold her position on this privacy claim, we are persuaded that the federal district court should not have exercised supplemental jurisdiction to decide this state law claim, and instead should have remanded it to the Colorado court for consideration and disposition.

Although the district court relied heavily on our decision in *Mares v. ConAgra Poultry Co.*, 971 F.2d 492 (10th Cir. 1992), we note that in that case plaintiff stressed that she was

not complaining about the drug testing and was willing to submit to the tests. *Id.* at 496. The *Mares* case, therefore, did not deal with the random drug issue raised in this case.

Plaintiff points out that the Colorado Supreme Court has authorized courts to "apply sections of the restatement as a formulation of the law that is applicable to the issue which is before the court." *Grease Monkey International, Inc. v. Montoya*, 904 P.2d 468, 470 n.2 (Colo. 1995). This approach was cited in a case involving a common law privacy issue. *See Borquez v. Ozer*, 923 P.2d 166 (Colo. Ct. App. 1995) (recognizing Restatement (Second) of Torts § 652D cause of action for violation of privacy by unreasonable publicity given to one's private life), *affirmed in part and reversed in part on other grounds*, 1997 WL 340666 (1997). Here plaintiff Roe relies on section 652B of the Restatement (Second) of Torts, which provides a cause of action for intrusion on one's seclusion:

**§ 652B.      Intrusion upon Seclusion**

**One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.**

**Comment:**

a.      The form of invasion of privacy covered by this Section *does not depend upon any publicity given to the person whose interest is invaded or to his affairs.* It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.

(emphasis added).

28

This privacy tort of intrusion upon seclusion thus does not depend on publicity, as the Restatement provides. This distinguishes Roe's challenge to the defendant CMCR's Policy from analysis made in the district judge's opinion relying on *Mares*. The district court rejected the privacy claim of Roe because of the absence of an allegation that CMCR disseminated or published the information on the prescription drug disclosure form. *See Roe v. Cheyenne Mountain Conference Resort*, 920 F. Supp. at 1155. There was no analysis below, however, of the facet of privacy law protecting against intrusion upon one's seclusion, which does not depend on publicity being given to the plaintiff's private affairs.

In connection with her claim of privacy infringement, Roe presented her affidavit explaining the embarrassment to her which disclosure to her supervisor, to the Human Resources Director, and to the General and Assistant General Managers would cause. Aplt. App. at 50. *See Borquez v. Ozer*, 923 P.2d 166, 176 (Colo. Ct. App. 1995) (holding no abuse of discretion to allow such testimony by plaintiff), *affirmed in part and reversed in part on other grounds*, 1997 WL 340666 (Colo. 1997). The Colorado Board of Pharmacy regulations protect the privacy interest of patients by prohibiting disclosure of any order for prescriptions, illness suffered by a patient, etc. Aplt. App. at 211.

In sum, plaintiff has raised a substantial issue with the possibility that Colorado would uphold an invasion of privacy by intrusion on seclusion, such as Roe's. We are convinced that in such circumstances, an authoritative state court ruling on the privacy claim should be permitted, instead of a guess or uncertain prediction by a federal court. Remanding this

claim to the Colorado courts is supported by *United Mine Workers v. Gibbs*, 383 U.S. 715

(1966), and other Supreme Court and Tenth Circuit precedents. *E.g.*, *Sullivan v. Scoular*

*Grain Co. of Utah*, 930 F.2d 798, 803 (10th Cir. 1991) (declining pendent jurisdiction is

appropriate when the court needs "'surer-footed' analysis of state law in an area of particular

importance to a state."). Exercising supplemental jurisdiction is within the district court's

discretion. However, in conformity with *Gibbs*, 28 U.S.C. § 1367(c) provides for declining

to exercise supplemental jurisdiction where

> (1) the claim raises a novel or complex issue of state law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Where federal claims have dropped out of the picture, as here, our court has stated that

> [T]he most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice--that is the seminal teaching of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), . . . .

*Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995).

The Supreme Court has instructed us that federal courts should consider the propriety

of exercising supplemental jurisdiction "in each case, and at every stage of the litigation."

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). Here the critical

30

importance of the privacy claim in connection with Roe's challenge to the prescription drug disclosure provisions, the random drug testing provisions, and the ban on use of non-prescription drugs, persuades us that this privacy claim should be remanded to the Colorado courts to permit authoritative disposition of the claim there. We feel that § 1367(c)(1) and (3) both apply here, favoring remand to the state court of the privacy claim made under Restatement § 652B principles; the claim raises a novel and complex issue of state law that is undecided by the Colorado courts and there are other compelling reasons for declining to exercise supplemental jurisdiction since this delicate privacy law area is in transition. Therefore we will vacate the summary judgment with respect to this privacy claim of intrusion upon seclusion by these provisions of the policy and will remand with directions for further remand to the Colorado courts for their consideration of Roe's claim implicating this important developing area of Colorado tort law. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. at 357.

Accordingly, we **AFFIRM** the district court's summary judgment holding that CMCR's Policy violated plaintiff Roe's rights under the Americans With Disabilities Act. We **REVERSE** the denial of injunctive relief for plaintiff Roe and the denial of her claim for attorney fees and costs and **REMAND** those claims for further proceedings in accord with this opinion. As to the state law claims, we **AFFIRM** the summary judgment rejecting plaintiff's claim of violation of Colorado public policy by CMCR's policy. With respect to the remaining claim of violation of Roe's right to privacy by intrusion upon her seclusion by

31

the prescription drug disclosure provisions, the random drug testing provision, and the prohibition of the use of non-prescription drugs, the judgment is **VACATED** and that claim is remanded with directions to further remand it to the Colorado state court for consideration and disposition.