Christina **MORRIS–EBERHART,**
Plaintiff,

v.

**J.G. MATHENA & ASSOC., INC., d/b/a Brennan–Mathena Funeral Home,**
Defendant.

**No. 98–4230–SAC.**

United States District Court,
D. Kansas.

Aug. 5, 1999.

Terry E. Beck, Topeka, KS, for defendant.

Monica M. Fanning, Foland & Wickens, PC, Kansas City, MO, Alan V. Johnson, Kyle J. Mead, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This Title VII employment discrimination case comes before the court on the defendant's motion to dismiss (Dk.5). The defendant contends it is not a Title VII employer, for it did not have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year," 42 U.S.C. § 2000e(b). The court previously construed the defendant's motion as brought under Fed.R.Civ.P. 12(b)(6) and converted it to a motion for summary judgment under Fed.R.Civ.P. 56. (Dk.14). The court also granted the plaintiff a sixty-day continuance to complete her discovery on this issue and to file her response to this converted motion for summary judg-

ment. In receipt of the plaintiff's response and the defendant's reply, the court is ready to rule.

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S.

at 586, 106 S.Ct. 1348; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

## STATEMENT OF UNCONTROVERTED FACTS

1. The defendant J.G. Mathena & Assoc., Inc. is a Kansas corporation which does business as Brennan–Mathena Funeral Home. Prior to its incorporation in July of 1997, defendant conducted its business as Brennan–Mathena Funeral Home, LLC.

2. In her complaint, the plaintiff Christina Morris–Eberhart alleges she was employed by defendant from January 2, 1997, through August 22, 1997.

3. For the years of 1996, 1998 and 1999, the defendant had fewer than fifteen employees.

4. For the year of 1997, the defendant's "Payroll Wages/Hours Reports" reflect that the defendant had fewer than fifteen or approximately thirteen employees for each working day in twenty or more calendar weeks.

5. The plaintiff submits copies of five checks drawn by defendant and made payable to Gary Dumas in the following amounts and on the following dates: $2,502.18 on February 4, 1997, $368.00 on August 22, 1997, $655.00 on September 20, 1997, $453.17 on October 1, 1997, and $850.00 on November 6, 1997. In reply to these exhibits, Gary Mathena, a shareholder and director of the defendant, avers that Gary Dumas is a painting contractor

who was hired on occasion in 1997 to perform several different painting jobs at the funeral home.

6. The plaintiff submits copies of five checks drawn by defendant and made payable to Robert Ferris in the following amounts and on the following dates: $175.00 on December 31, 1996, $200.00 on January 8, 1997, $175.00 on February 3, 1997, $175.00 on March 27, 1997, and $175.00 on October 17, 1997. In reply to these exhibits, Gary Mathena avers that Robert Ferris is a grave digger and that the checks issued to him were cash advances made on behalf of various families in payment for his grave digging services.

7. The plaintiff submits copies of ten checks drawn by defendant and made payable to Lucile Krische in the following amounts and on the following dates: $35.00 on February 13, 1997, and $30.00 on the following dates—March 31, 1997, May 7, 1997, May 7, 1997, June 23, 1997, June 30, 1997, June 30, 1997, July 11, 1997, December 1, 1997, and December 1, 1997. In reply to these exhibits, Gary Mathena avers that Lucile Krische is the organist at St. Joseph's Church and that the checks issued to her were cash advances made on behalf of various families in payment for her service as an organist.

8. The plaintiff submits copies of six checks drawn by defendant and made payable to Agnes Schiffelbein in the following amounts and on the following dates: $40.00 on August 10, 1997, and $30.00 on the following dates—March 2, 1997, March 18, 1997, March 24, 1997, August 7, 1997, and October 8, 1997. In reply to these exhibits, Gary Mathena avers that Agnes Schiffelbein is the organist at Sacred Heart Church and that the checks issued to her were cash advances made on behalf of various families in payment for her service as an organist.

9. The plaintiff submits copies of seven checks drawn by defendant and made payable to Lyman Woelk in the following amounts and on the following dates: $306.19 on April 16, 1997, $150.00 on May 5, 1997, $392.00 on June 14, 1997, $510.69 on July 21, 1997, $418.67 on August 28, 1997, $350.00 on September 8, 1997, and $650.58 on November 25, 1997. In reply to these exhibits, Gary Mathena avers that Lyman Woelk owns a lawn care service and that the checks were issued in payment for his lawn care services performed at the funeral home.

10. Gary Mathena further avers that the payments made to Gary Dumas, Robert Ferris, Lucile Krische, Agnes Schiffelbein and Lyman Woelk were not made from any payroll account and were not made pursuant to any employment agreement. The defendant did not send any IRS Form 1099s to these payees and did not withhold any taxes or other amounts from the payments. Finally, the defendant did not provide any employment benefits to these payees.

## GOVERNING LAW

Title VII defines an "employee" as "an individual employed by an employer," 42 U.S.C. § 2000e(f), and an "employer" as a "person ... who has fifteen or more employees" during a specified period of time, 42 U.S.C. § 2000e(b). These terms and definitions by themselves are not helpful in defining when an employment relationship exists. *See Cilecek v. Inova Health System Services*, 115 F.3d 256, 259 (4th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 694, 139 L.Ed.2d 639 (1998). In other contexts, the Supreme Court has concluded that when "employee" appears in a statute without a specific definition then "Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (ERISA) (quoting *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 739–740, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (Copyright Act)). Following *Reid*, the Court in *Nationwide* adopted the "common-law test for determining who qualifies as an 'employee'

under ERISA." 503 U.S. at 323–24, 112 S.Ct. 1344[1]. More recently, the Court agreed that "an individual who appears on the payroll but is not an 'employee' under traditional principles of agency law, (citation omitted), would not count toward the 15–employee minimum." *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 211–12, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997).

In deciding whether an employment relationship exists, the Tenth Circuit has followed the hybrid approach typically utilized in Title VII cases. *Lambertsen v. Utah Dept. of Corrections*, 79 F.3d 1024, 1028 (10th Cir.1996) (citation omitted); *see Zinn v. McKune*, 143 F.3d 1353, 1357 (10th Cir.1998). This approach is practically "indistinguishable" and bears "little discernible difference" to the common-law agency approach. *Lambertsen*, 79 F.3d at 1028 (citations omitted). "Both approaches emphasize the right of the hiring party to control the means and manner by which the work is accomplished, but allow consideration of other factors," such as the following:

> (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the man-

ner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. *Id.* No single factor is conclusive. Rather, the courts are to look at the totality of circumstances surrounding the working relationship between the parties. *Id.*

*Lambertsen*, 79 F.3d at 1028 (citing *Oestman v. National Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir.1992)).

## ANALYSIS

The plaintiff reads the *Walters* decision as establishing the "payroll method," that is, does the individual appear on the employer's payroll, as the exclusive method for determining when an employment relationship exists. The plaintiff points to the circumstances that the defendant issued checks to these other five persons for work performed in 1997, that the defendant did not send any IRS Form 1099s to any of these persons, and that the plaintiff averred earlier that the defendant had an employment relationship with Agnes Schiffelbein. The plaintiff opines that a jury could reasonably find from this evidence that the defendant had an employment relationship with fifteen or more employees for at least twenty weeks during 1997.

 In *Walters*, the Supreme Court held that the issue of a person being an

---

1. The Supreme Court summarized this common law test in *Reid* and quoted the same in *Darden*:

 "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's

discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

*Darden*, 503 U.S. at 323–24, 112 S.Ct. 1344 (quoting *Reid*, 490 U.S. at 751–52, 109 S.Ct. 2166). "[A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Darden*, 503 U.S. at 324, 112 S.Ct. 1344 (quotation omitted)

employee is not determined based on whether the person actually worked on that day but on whether an employment relationship existed on the day in question. 519 U.S. at 206–08, 117 S.Ct. 660. The Supreme Court recognized that an "employment relationship is most readily demonstrated by individual's appearance on the employer's payroll," 519 U.S. at 206, 117 S.Ct. 660, but that "an individual who appears on the payroll but is not an 'employee' under traditional principles of agency law, ..., would not count," 519 U.S. at 211–12, 117 S.Ct. 660 (citation omitted). *See Hosler v. Greene,* 173 F.3d 844, 1999 WL 278527, at *1 (2nd Cir. May 3, 1999) (table); *Sharp v. Earth Science Laboratories, Inc.,* 1999 WL 493274 (E.D.La. July 9, 1999). "Thus, *Walters* does not establish that only a wage or salary will establish an 'employment relationship,' " because an individual's "appearance on the payroll is not always determinative." *Keller v. Niskayuna Consolidated Fire District 1,* 51 F.Supp.2d 223, 229–30 (N.D.N.Y.1999). "[T]he ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals." *Walters,* 519 U.S. at 211–12, 117 S.Ct. 660. Therefore, independent contractors are not counted as employees in determining whether an entity is an employer under Title VII. *See Cilecek v. Inova Health System Services,* 115 F.3d at 260; *Sharp,* 1999 WL 493274, at *2. In short, the plaintiff here overlooks that *Walters* while focusing on the employer's payroll listing still retains the traditional common-law principles of agency law in determining whether an individual is an "employee."

The plaintiff does not offer any proof that the defendant included any of the other five named individuals on its payroll register, accounts or related documents. Instead, the plaintiff simply equates the employer's occasional check for services rendered as the payee's appearance on the employer's payroll. There is no evidence that the defendant withhold any taxes from these payments, that the defendant recorded the hours worked by these individuals, that the defendant calculated the compensatory payments based on the time worked rather than the job performed, that the defendant awarded or calculated any leave time for these payees, that the defendant tracked for each payee the total amount of payments made, or that the defendant provided them with any benefits typically associated with employment. The facts of this case as framed by the governing law do not support an inference that any of the five individuals were on the defendant's payroll. The plaintiff cites no precedent for treating the employer's mere issuance of checks under these circumstances the same as a person appearing on an employer's payroll. Thus, the plaintiff's evidence does not satisfy the primary criterion expressed in *Walters.*

"At root, the distinction at common law between an employee and an independent contractor rests on the degree of control exercised by the hiring party. An employer controls the work and its instrumentalities and circumstances to a greater degree than does a hiring party in an independent contractor relationship." *Cilecek,* 115 F.3d at 260 (citation omitted). The record is uncontroverted that Dumas and Woelk were self-employed persons operating their own businesses and were paid by the defendant for completing various painting or lawn care jobs at the defendant's business establishment. The record is devoid of any evidence showing the defendant to have exercised more control over Dumas or Woelk than would be typical of an independent contractor relationship.

As for Ferris, Krische and Schiffelbein, the plaintiff comes forth with no proof of these individuals doing any work for the defendant and being compensated for the same. The record is uncontroverted that they provided services to the families of deceased individuals and that the defendant simply made cash advances to them

**1306**

at the families' request. The plaintiff's conclusory averment to the contrary regarding Schiffelbein does not create a genuine issue of material fact.[2] Nor does the court believe that the absence of Form 1099s on these individuals create a genuine issue of material fact.

Because a jury could not reasonably find from this record that the defendant is an "employer" under Title VII, the defendant is entitled to summary judgment on this claim. Having dismissed all claims over which it has original jurisdiction, the court declines to exercise supplemental jurisdiction on the plaintiff's state law claims, 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."). When the federal claims have dropped from the case, the seminal teaching of *Gibbs* is that the most common response is to dismiss the state law claims without prejudice. *Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1237 (10th Cir.1997). The parties do not argue any unique circumstances, and the court finds none, that would justify exercising supplemental jurisdiction over the state law claims.

IT IS THEREFORE ORDERED that the defendant's converted motion for summary judgment on the Title VII claim (Dk.5) is granted;

IT IS FURTHER ORDERED that the plaintiff's state law claims are dismissed without prejudice.

---

**2.** The averment was made prior to the plaintiff completing her discovery on this issue. The averment is nothing more than the plaintiff's opinion without any foundation given for the plaintiff having knowledge to render it. Indeed, the plaintiff also named in her affidavit two other individuals as employees but later abandoned them as possible employees in opposing summary judgment.