**Brenda GREEN, Plaintiff,**

v.

**JOY CONE COMPANY, Defendant.**

No. C.A. 01–2471.

United States District Court,
W.D. Pennsylvania.

Aug. 21, 2003.

Samuel J. Cordes, Colleen Ramage Johnston, Ogg, Cordes, Murphy & Ignelzi, Pittsburgh, PA, Gary F. Lynch, New Castle, PA, for plaintiff.

Patrick W. Ritchey, Darren P. O'Neill, Reed Smith, Pittsburgh, PA, for defendant.

## *OPINION*

COHILL, Senior District Judge.

This case is before us via a "Notice of Right to Sue" issued by the Equal Employment Opportunity Commission ("EEOC") on or about September 24, 2001 in response to Plaintiff's allegation of a *per se* violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213. The Defendant has submitted a Motion to Dismiss the Complaint or in the Alternative for Summary Judgment (Doc. 4) based on both a lack of standing and the absence of a cause of action under the ADA. Plaintiff responded with both a Response Brief as well as a Motion for Partial Summary Judgment (Doc. 9) on the issue of the ADA claim. For the reasons stated below, we will grant Defendant's Motion in its entirety and deny Plaintiff's Motion.

## I. *GENERAL BACKGROUND*

Plaintiff's claim followed the usual path to judicial review of a claim under the ADA. Plaintiff applied for a position with Joy Cone Company ("Joy Cone") on February 12, 2001. *Green Compl.* ¶ 17. Included in the application materials was a form explaining Joy Cone's physical examination policy and requiring authorization to allow Joy Cone access to the applicant's medical records ("Release Form"). *Green Compl.* ¶ 18. Plaintiff received no further communication from Defendant regarding

the status of her application, and on March 6, 2001, Plaintiff filed a charge of discrimination against Joy Cone Company with the EEOC alleging a per se violation of the ADA's prohibition against "pre-offer" medical inquiries. *Aff. of Tracey Billings*, Ex. B, attached to *Def's Mot. to Dismiss the Compl. or in the Alternative for Summ. J.* On September 24, 2001, the EEOC dismissed Plaintiff's claim and gave notice of Plaintiff's right to sue under the ADA. *Aff. of Tracey Billings*, Ex. B. Thereafter, Plaintiff retained an attorney and filed a class action suit in this court against Joy Cone pursuant to 42 U.S.C. § 12112(d).

Plaintiff's complaint alleges that the employment policy of Joy Cone, which requires applicants to execute an authorization to release their medical records as part of the initial paperwork necessary for consideration for employment, is a *per se* violation of the ADA's policy against pre-offer medical inquiries. *Green Compl.* ¶ 14, 16, 34. Thus, Plaintiff claims that because she signed the Release Form allowing Joy Cone to obtain access to her medical records at the pre-offer stage, she is entitled to recover damages and seeks an injunction on behalf of herself and other similarly-situated applicants to prevent Joy Cone from continuing this practice. *Green Compl.* ¶¶ 32, 35.

Defendant does not dispute the facts as related by Plaintiff, but argues that they do not establish a cause of action under 42 U.S.C. § 12112. *Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Compl. or in the Alternative for Summ. J.*, at 2. According to Joy Cone, the explanation in the first sentence of the Release Form makes clear that a medical inquiry will take place *only* after an offer of employment. *Id.* The ADA expressly authorizes employers to conduct medical examinations or inquiries after an offer of employment has been extended to the individual as long as all applicants are subjected to the same procedures and medical records are kept confidential. *Id.* at 4 (citing 42 U.S.C. § 12112(d)). Furthermore, Defendant argues that Plaintiff lacks standing since Ms. Green has suffered no injury-in-fact due to Joy Cone's conduct and she does not claim to have a disability for which she is being discriminated against. *Def.'s Mot. to Dismiss Compl. or in the Alternative for Summ. J.*, ¶ 2; *Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Compl. or in the Alternative for Summ. J.*, at 7.

Plaintiff argues that because Joy Cone does not dispute its business practice of including the Release Form in pre-offer application materials and the Form is *per se* illegal under the ADA, she should be granted summary judgment on this issue. *Br. in Supp. of Pl.'s Mot. for Partial Summ. J.*, 1. In relation to standing, Plaintiff argues that she need not prove that she is disabled in order to pursue claims for injunctive relief, and requests more time to conduct discovery in accordance with Federal Rule 56(f) to establish her standing for pecuniary relief. *Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss the Compl. or in the Alternative for Summ. J.*, at 3 and 6; *Aff. of Gary F. Lynch, Esq. Pursuant to Fed.R.Civ.P. 56(f)*. Plaintiff and Defendant both point to similar evidence derived from a plain reading of the statute, 42 U.S.C. § 12101 *et seq.*, and legislative history of the adoption of the ADA in order to lend credence to their positions.

## II. STANDARD OF REVIEW

### A. Motion To Dismiss

A motion to dismiss pursuant to Federal Rule 12(b)(6) tests the legal sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that

could be established in support of the claim. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99); *see also Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir. 1985). "A motion to dismiss pursuant to 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir.1997). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

As an initial matter, we must determine the extent of our consideration of the materials submitted by the parties. "When deciding a motion to dismiss, it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 259 (3d Cir.1998) (*citing* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990)); *see also Rogan v. Giant Eagle, Inc.,* 113 F.Supp.2d 777, 782 (W.D.Pa.2000). " 'Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court.' " *Pryor v. NCAA,* 288 F.3d 548, 560 (3d Cir.2002) (*quoting* 62 Fed. Proc., L.Ed. § 62:508).

■ Here, we may consider the medical consent form submitted by Joy Cone that is the central basis of Ms. Green's claim. The form is alleged in the Complaint and neither party questions its authenticity. *Pryor,* 288 F.3d at 560. Joy Cone also submitted an affidavit from Tracy Billings, Joy Cone's Personnel Manager. Joy Cone describes the affidavit as merely authenticating the medical form and setting forth facts not inconsistent with the Complaint. *Reply Br. in Supp. of Def.'s Mot. to Dismiss or in the Alternative for Summ. J.,* at 14 n. 15. Joy Cone apparently concedes that Ms. Billings' affidavit cannot be considered unless we convert this motion to dismiss into a motion for summary judgment. *See Id.* ("The Court can decide this case without reference to her affidavit.")

The information submitted in Ms. Billings' affidavit offers material factual evidence not contained in the Complaint that both parties rely on in arguing that summary judgment is appropriate. We will not exclude consideration of Ms. Billings' affidavit and thus we will treat the motion to dismiss as a motion for summary judgment. Fed.R.Civ.P. 12(b)(6). We further conclude that the parties have provided all material pertinent to our disposition of this motion. Significantly, the parties agree that the Court can, and should, decide as a matter of law the central issue of whether Joy Cone has committed a *per se* violation of the ADA as evidenced by their cross motions for partial summary judgment.

■ Ms. Green objects to our deciding the issue of standing at this stage of the proceedings contending that she needs to conduct discovery. *Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss the Compl. or in the Alternative for Summ. J.,* at 6 (referring to Plaintiff's counsel's affidavit). Specifically, and solely, she requests that we defer a determination until she has had the opportunity to conduct discovery "regarding whether the defendant obtained and/or intended to consider information pursuant

to the Authorization to Release Medical Records executed by plaintiff." *Affidavit of Gary F. Lynch, Esq. Pursuant to Fed. R.Civ.P. 56(f)*, at ¶ 3. As discussed below, there is no merit to Ms. Green's contention that deferral of this issue is necessary while she pursues the above question.

### B. Summary Judgment

Summary judgment is a mechanism used to end litigation where there are no disputed factual issues to be determined at trial and one of the parties is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The procedure is regarded as "an integral part of the Federal Rules as a whole, and is designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1.) Thus, the judge's function in relation to summary judgment is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If reasonable minds could differ with regard to the believability or import of the evidence, summary judgment should not be granted. *Id.* at 250, 106 S.Ct. at 2511 (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62, 69 S.Ct. 413, 417, 93 L.Ed. 497 (1949)). However, the presence of "a scintilla of evidence in support of the [non-moving party] will be insufficient" to carry the case to trial. *Id.* at 252, 106 S.Ct. at 2512. When a motion for summary judgment is made, the non-moving party may not simply rest on the allegations, but must prove affirmatively that an issue of material fact does exist between the parties. Fed.R.Civ.P. 56(e). If the motion granted does not end the case in its entirety, the court shall ascertain the material facts that remain in controversy. Fed.

R.Civ.P. 56(d). "Material facts" are defined only as those that are likely to affect the outcome of the case under the applicable law. *Id.* at 248, 106 S.Ct. at 2510.

If the non-moving party carries the burden of persuasion at trial, the party moving for summary judgment may satisfy its initial burden by showing affirmative evidence negating an essential element of the non-moving party's claim, or showing that the non-moving party's evidence is either absent or insufficient to establish an essential element of her claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. If the moving party carries the burden of persuasion at trial, the movant's initial burden is to show credible evidence to support her claim. *Id.* at 322–323, 106 S.Ct. at 2552. There is no "express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim ... [T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 324, 106 S.Ct. at 2553.

Once the party moving for summary judgment has satisfied its initial burden of production on the motion, then the burden shifts to the party opposing the motion. The party must set forth specific facts to show that there is a genuine issue for trial. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and has an affirmative duty to produce evidence demonstrating the existence of a factual dispute. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the movant carries the burden of persuasion at trial, the party opposing the motion must show evidentiary materials demonstrating the existence

of a genuine issue for trial, or must submit a motion requesting additional time for discovery. If the non-movant carries the burden at trial, the party opposing summary judgment must show sufficient evidence to make out its claim. In general, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Id.* at 587, 106 S.Ct. at 1356 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

If the party opposing the motion for summary judgment satisfies its shifted burden of production and brings forth materials showing a genuine issue of material fact, the movant carries the ultimate burden of proof on the motion for summary judgment. In adducing this, the court must evaluate the entire setting of the case, including the record and all materials submitted in accordance with the motion for summary judgment; whether it is clear that a trial is unnecessary; and whether there is any doubt as to the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 324–25, 106 S.Ct. at 2553–54. Discovery also plays a role in the determination of the fairness of summary judgment, as Rule 56(f) allows the court to refuse the application for summary judgment or grant a continuance on the hearing in response to a request from the non-moving party for additional time for discovery. Fed. R.Civ.P. 56(f). This ensures that a premature motion is not granted, thus precluding a meritorious suit from going to trial and an injured party from being granted a fair judgment under the law. *Id.* 477 U.S. at 326, 106 S.Ct. at 2554; Fed.R.Civ.P. 56(f).

## III. APPLICABLE LAW

### A. Americans With Disabilities Act

The Americans with Disabilities Act of 1990 was enacted in order "to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to bring persons with disabilities into the economic and social mainstream of American life." H.R.Rep. No. 101–485(II), 101st Cong., 2nd Sess., 23 (1990), *reprinted in* 1990 U.S.C.C.A.N., 304. In relation to employment, 42 U.S.C. § 12112 mandates that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

Thus, the ADA is primarily concerned with discrimination against persons with disabilities, and its provisions ensure that employment practices do not unjustly hold an individual back from employment opportunities due solely to the existence of a disability.

In reference to the presence of questions on application materials which work to uncover "hidden" disabilities, thus excluding persons with disabilities from employment before their qualifications are evaluated, the ADA includes a section corresponding specifically to medical examinations and inquiries. H.R. Rep. No. 101–485(II), 101st Cong., 2nd Sess., 72 (1990), *reprinted in* 1990 U.S.C.C.A.N., 355.

The ADA identifies three distinct time periods in which the standards for medical review are enumerated: Pre-offer, post-offer and employment.

### 1. Pre–Offer Medical Review

In the pre-offer stage, which is at issue in the instant action, "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to

whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). The purpose behind the prohibition of medical inquiries in the pre-offer stage is to ensure that misconceptions regarding the potential of persons with disabilities and/or prejudice against persons with disabilities does not "bias the employment selection process." H.R.Rep. No. 101–485(II), 101st Cong., 2nd Sess., 72–73 (1990), *reprinted in* 1990 U.S.C.C.A.N., 355. Employers may not ask questions that are likely to elicit a response relating to an individual's disability or the possible presence of a disability, but they may inquire about an applicant's ability to perform essential job functions. 42 U.S.C. § 12112(d)(2)(B).

### 2. Post–Offer Medical Review

The ADA gives employers more flexibility with regard to employment entrance examinations. "A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination." 42 U.S.C. § 12112(d)(3).

### 3. Current Employment Medical Review

The ADA has also established guidelines and requirements for medical examinations of current employees. In brief, medical examinations and inquiries of employees are only acceptable when proven to be both necessary and job-related. 42 U.S.C. § 12112(d)(4)(A).

### 4. EEOC Guidelines

Also relevant to the interpretation of the ADA, the EEOC established a set of guidelines in order to communicate the position of the EEOC with regard to the ADA and also to assist EEOC investigators in determining whether complaints filed against employers are meritorious. *Enforcement Guidance on Pre–Employment Inquiries Under the Americans with Disabilities Act,* Daily Labor Report (BNA) No. 290 § 902:0071. Although these guidelines are not binding on the court, they do act as informative insight into the provisions of the ADA to which they relate, since employment discrimination charges go through the EEOC before they are filed with the court.

The guidelines state that: "An employer may not ask disability-related questions or require a medical examination pre-offer *even if* it intends to look at the answers or results only at the post-offer stage." *Guidance Manual,* § 902:0071 (emphasis in original). In general, the manual defines a "disability-related question" as one that is "*likely* to *elicit* information about a disability." *Guidance Manual,* § 902:0072 (emphasis in original). The Manual provides factors to help ascertain if a test required by an employer is considered a *medical* examination. Included within these are: Whether it is administered by a health care professional, whether the results are interpreted by a health care professional, whether it is designed to reveal a physical or mental impairment, whether the purpose is to uncover a physical or mental impairment, the invasiveness of the procedure, what it measures, where it is typically performed, and whether medical equipment is used. *Guidance Manual,* § 902:0075. The Manual also includes questions commonly asked by employers and provides examples of both acceptable and prohibited situations with regard to the provisions of the statute.

### B. Private Right Of Action In Claims Under The ADA

There is no generally-accepted rule of law with regard to whether a non-disabled

individual may bring a claim for a violation of the ADA. In fact, several courts have refused to rule on the issue, preferring instead to dismiss charges on another ground.[1] In the courts which have decided the question, two basic lines of reasoning have prevailed: One being that only "qualified individuals with a disability" may bring claims under the ADA and the other that any individual who has been subjected to a violation of the provisions of the ADA may bring an action under the statute.

Following its decision in *Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221 (10th Cir.1997), where the court declined to decide whether an applicant for employment may bring a claim under the ADA regardless of disability status, the Tenth Circuit affirmatively clarified its position that the provisions of the ADA regarding medical examinations and inquiries are not reserved for "qualified persons with a disability." *Griffin v. Steeltek, Inc.,* 160 F.3d 591 (10th Cir.1998). The court bolstered its finding with language from the statute, quoting the use of "job applicant" in § 12112(d)(2) and "employee" in § 12112(d)(4) in contrast to the more limiting term "qualified individual with a disability" used elsewhere in the statute.

Additionally, the *Griffin* court noted that the policy behind the ADA is to provide equal opportunities to persons with disabilities in part by prohibiting all questions and practices which are likely to identify a disability. "This policy is best served by allowing *all* job applicants who are subjected to illegal medical questioning and who are in fact injured thereby to bring a cause of action against offending employers." *Id.* at 594 (emphasis in original).

Using the same reasoning, the Eighth Circuit found that "whether or not [Plaintiff] is disabled, the ADA protects her from unauthorized disclosures of medical information by her employer." *Cossette v. Minnesota Power & Light,* 188 F.3d 964, 969–70 (8th Cir.1999). The Ninth Circuit also affirmatively addressed this issue, finding that "[Plaintiff] does not have to be a 'qualified individual with a disability' in order to have standing to invoke the ADA's protection against improper medical examinations." *Fredenburg v. Contra Costa County Dep't of Health Serv's,* 172 F.3d 1176, 1181 (9th Cir.1999). The court reasoned that the more restrictive language of 42 U.S.C. § 12112(a), which refers exclusively to "qualified individuals with a disability" and is incorporated into 42 U.S.C. § 12112(d), is not applicable to

---

**1.** For example, although both the plaintiff and the EEOC requested the Fifth Circuit Appeals Court to reverse the lower court's grant of summary judgment and find a cause of action under the ADA irrespective of disability, the court declined to rule on the matter, and affirmed the District Court's ruling based on the finding that the plaintiff "failed to demonstrate that he is entitled to relief … and because he lacks standing to seek injunctive or declaratory relief." *Armstrong v. Turner Industries, Inc.,* 141 F.3d 554, 556 and 558–59 (5th Cir.1998). Similarly, the Tenth Circuit at first declined to decide whether an unsuccessful job applicant who was subjected to an impermissible medical inquiry may bring a claim under the ADA regardless of

disability status. *Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1228–29 (10th Cir.1997). However, in arguing that the issue of the plaintiff's status with regard to having a disability does *not* go to standing, the Court determined that "a present employee may sue for injunctive relief from such a prohibited inquiry." *Id.* at 1229. The Third Circuit also decided against ruling on the issue, stating: "[W]e leave for another day the question whether the ADA permits non-disabled individuals to sue, because it is clear that in this case, [Defendant's] requirement of an Independent Medical Examination (IME) was permissible under the statute." *Tice v. Centre Area Transportation Authority,* 247 F.3d 506, 517 (3d Cir.2001).

subsections (d)(2), (d)(3) and (d)(4) because these subsections expressly pertain to "job applicants" and "employees". *Id.* at 1182. As the Eighth and Tenth Circuits have also concluded, the Ninth Circuit stated that "protecting only qualified individuals would defeat much of the usefulness of [sections 42 U.S.C. §§ 12112(d)(2), (3), and (4)]." *Id.*

Several district courts have ruled that the ADA is applicable only to "qualified individuals with a disability," and therefore, an individual without a disability covered under the statute may not bring an action under the ADA. There are three primary tenets to the argument: A plain reading of the statute suggests that a cause of action alleging improper medical examinations or inquiries must be brought by a "qualified individual with a disability"; the legislative history suggests that the statute does not allow a claim by a nondisabled person; and the EEOC regulations do not establish a defense for nondisabled persons. *Adler v. I & M Rail Link, L.L.C.,* 13 F.Supp.2d 912, 934–37 (N.D.Iowa 1998). However, this line of reasoning has not garnered much support, and in fact, the district courts that have gone in this direction have been largely over-ruled by their circuit courts. Moreover, the *Adler* opinion, which provides the most thorough legal analysis of the issue, has been rendered virtually ineffectual since the Eighth Circuit ruled to the contrary in *Cosette,* 188 F.3d 964. The only district court opinion in this vein that remains uncontradicted is the *Varnagis* decision from the Northern District of Illinois. *Varnagis v. Chicago,* No. 96 C 6304, 1997 WL 361150 (N.D.Ill. June 20, 1997). Here, the Court used the same reasoning as that delineated above to conclude that "we have no doubt that the pre-offer medical examination prohibition applies only to a 'qualified individual with a disability.'" *Id.* at *7.

### C. Standing

In accordance with the doctrine of separation of powers, the United States Constitution established the concept of standing in order to determine those disputes which are properly before the court. U.S. Const., Art. III, § 2; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990)). In general, standing refers to "[w]hether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton,* 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972).

There are three constitutionally-mandated components of standing: The plaintiff must have suffered an injury-in-fact; there must be a causal connection between the injury and the conduct addressed in the complaint; and the injury must be redressable by a favorable result. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136 (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990); *Warth,* 422 U.S. at 508, 95 S.Ct. at 2210). The constituents of standing are essential to the plaintiff's case, and therefore must be proven in accordance with the standards required in each successive stage of the proceeding. *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136. Additionally, when requesting injunctive relief, the plaintiff's burden is not satisfied by proving the occurrence of prior illegal acts, but must include proof of continuing violations. *Lujan,* 504 U.S. at 564, 112 S.Ct. at 2138 (quoting *Los Angeles v.*

*Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665 (1983)).

### 1. Injury–In–Fact

■ All courts that have addressed the issue of standing in a cause of action under the ADA have determined that a plaintiff must prove an injury-in-fact in order to go forward with the suit. *Tice v. Centre Area Transportation Authority,* 247 F.3d 506, 519–20 (3d Cir.2001). Injury-in-fact encompasses both actual damages in the form of emotional, pecuniary, compensative, or otherwise, as well as the presence of a continuing illegal practice. *Id.* at 519. An injury-in-fact as alleged by the plaintiff must be "actual" or "imminent" (as opposed to "conjectural" or "hypothetical") and must affect the plaintiff individually. *Id.* at 560, 563, 112 S.Ct. at 2136–37 (citing *Allen v. Wright,* 468 U.S. 737, 756, 104 S.Ct. 3315, 3327, 82 L.Ed.2d 556 (1984); *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club,* 405 U.S. at 740–41, n. 16, 92 S.Ct. 1361, 1369, n. 16, 31 L.Ed.2d 636 (1972); *Whitmore,* 495 U.S. at 155, 110 S.Ct. at 1723 (quoting *Lyons,* 461 U.S. at 102, 103 S.Ct. at 1665); and *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 41–43, 96 S.Ct. 1917, 1924, 1926, 48 L.Ed.2d 450 (1976)). In the absence of a cognizable injury, no claim under 42 U.S.C. § 12112(d) may be pursued, as there is no basis for the suit. *Tice,* 247 F.3d at 519, n. 12.

### 2. Causation

■ Additionally, the ADA requires a causal link between the violation and the damages sought by the plaintiff. *Buchanan v. San Antonio,* 85 F.3d 196, 200 (5th Cir.1996). The Fifth Circuit has narrowly interpreted the element of causation in a claim under the ADA, finding that "damages may not be awarded for such a viola-tion if the defendant 'would have taken the same action in the absence of the impermissible motivating factor' " *Id.* (citing 42 U.S.C. § 2000e–5(g)(2)(B)). The Third Circuit has adopted a similar position with regard to causation in the context of pre-employment medical examinations and inquiries, agreeing that "there is no indication in either the texts of the ADA or in its history that a technical violation of § 12112(d) was intended to give rise to damages liability." *Tice,* 247 F.3d at 520. However, the Seventh Circuit has more broadly interpreted causation, determining that "proving that the same decision would have been justified . . . is not the same as proving that the same decision would have been made." *O'Neal v. New Albany,* 293 F.3d 998, 1008 (7th Cir.2002) (citing *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352,360, 115 S.Ct. 879, 130 L.Ed.2d 852, (1995)).

### 3. Redressability

■ Although there is not a plethora of case law with regard to the last element of standing, the redressability of the injury, the plaintiff indeed must be able to prove that the grant of damages or an injunction would adequately remedy the alleged violation of the ADA.

## IV. DISCUSSION

We first address the issue of whether a non-disabled individual may bring a claim under the ADA. Next, we discuss whether Defendant's employment practice has violated the ADA. Finally, we address the argument of whether Plaintiff has standing to bring a cause of action.

### A. Private Right Of Action In Claims Under The ADA

■ In 1999 the Western District of Pennsylvania addressed the question of whether a non-disabled individual may

bring a case under the ADA. Then–Chief Judge D. Brooks Smith determined that the rationale of those courts that have held that a non-disabled individual may bring an action under the ADA is persuasive. *Mack v. Johnstown America Corp.,* No. CIV.A.97–325J, 1999 WL 304276, at *5 (W.D.Pa. May 12, 1999). We concur and find that Ms. Green, an individual who has not been identified as having a disability, can bring a cause of action under the ADA alleging impermissible medical examinations and inquiries.

As the court stated in *Cheyenne Mountain,* the issue of whether a plaintiff bringing suit under the ADA comes within the definition of an individual with a disability does not go to standing, but rather forms an element of the claim. *Cheyenne Mountain,* 124 F.3d at 1229. While a plaintiff alleging discrimination in employment due to a disability must establish that she is a "qualified individual with a disability" as part of her prima facie case, a violation of the ADA's prohibition against pre-employment inquiries does not require a showing of a qualified disability. *Fredenburg,* 172 F.3d at 1178, 1181 (citing 42 U.S.C. § 12112(a); *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1480 (9th Cir.1996)). As the *Cheyenne Mountain* court cogently reasoned: "It makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability." *Cheyenne Mountain,* 124 F.3d at 1229, n. 5.

As stated in section 12101(b)(1), the function of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." In our view, the *Griffin* court correctly explained that "[t]his policy is best served by allowing *all* job applicants who are subjected to illegal medical questioning and who are in fact injured thereby to bring a cause of action against offending employers, rather than to limit that right to a narrower subset of applicants who are in fact disabled." *Griffin,* 160 F.3d 591, 594.

Additionally, the United States Court of Appeals for the Tenth Circuit persuasively reasoned: "The use of the terms ['job applicant' and 'employee'] in §§ 12112(d)(2) and (4) defining a broader class of people than the class specified elsewhere in the ADA (the class of qualified individuals with disabilities) cannot be accidental, and it points inextricably to the broader scope of coverage intended for those two sections." *Griffin,* 160 F.3d at 594. Since the terms "job applicant", "employee", and "qualified individual with a disability" are used very specifically throughout the sub-chapter, it is unlikely that the legislature intended that they refer to the same group of individuals. Additionally, the term "employee" encompasses all "individual[s] employed by an employer," while the term "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(4) and (8).

Thus, because Ms. Green is not claiming discrimination on behalf of a disability, but is alleging a violation of the proscription against pre-employment medical examinations and inquiries, we conclude that she need not prove to the court that she is a "qualified individual with a disability" as part of her claim for injunctive relief. We turn now to the merits of Ms. Green's claim that Joy Cone has violated the ADA by making an illegal pre-offer medical inquiry.

### B. *Pre–Offer Medical Inquiries*

### 1. *Per Se Violation*

It is first relevant to note what Plaintiff does *not* claim. Ms. Green does not allege

that Defendant obtained her medical records from the physician whose name was provided on the Release Form, nor does she contend that she was subjected to a medical examination of any kind. Additionally, Ms. Green does not claim that Joy Cone directly inquired either within the application materials or orally whether she is an individual with a disability or as to the nature or severity of such disability. Furthermore, Ms. Green does not allege to have a disability for which she is being discriminated against by Joy Cone in the employment process. Thus, the only ADA issue in this case is whether the presence of a form in the application materials which authorizes Joy Cone to obtain the medical records of applicants violates the ADA.

We believe that the core difference between the reasoning of Plaintiff and that of Defendant lies in the interpretation of "inquiry" under the ADA. Ms. Green argues that the Release Form constitutes a *per se* violation of the ADA, as it acts as a forbidden pre-offer medical inquiry. *Compl.,* ¶¶ 16–19; *Br. in Supp. of Pl.'s Mot. for Partial Summ. J.,* 3, 5. Joy Cone counters that the Release Form is included in the application materials solely for convenience, and because medical information is not obtained until *after* a conditional offer of employment, the Form itself cannot be considered an inquiry. *Mem. of Law in Supp. of Def.'s Mot. to Dismiss Compl. or in the Alternative for Summ. J.,* 2.

Plaintiff asserts two basic arguments in support of her claim that the Release Form is a per se violation of the ADA. The first is based upon the general purpose behind the ADA's prohibition against pre-employment medical examinations and inquiries. The second is the practical possibility that Joy Cone *could* access an applicant's medical records prior to the company extending a conditional offer of employment.

### a. Reasoning Behind The ADA

The ADA *expressly* prohibits employers from making disability-related inquiries in the pre-employment stage unless such inquiry is directly related to business necessity.

> [A] covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability ... A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

42 U.S.C. § 12112(d)(2)(A), (B). A plain reading of the statute lends credence to Plaintiff's argument that "it is the *inquiry*, not the obtainment of knowledge, which is prohibited." *Br. in Supp. of Pl.'s Mot. for Partial Summ. J.,* 3 (emphasis added). However, we agree with Defendant that "Plaintiff must *establish* that Joy Cone made an unlawful pre-offer inquiry" in order to find a violation of the ADA. *Reply Br. in Supp. of Def.'s Mot. to Dismiss or in the Alternative for Summ. J.,* 3 (emphasis added).

Although the proscription against questions relating to an applicant's disability is rather straightforward, what constitutes an "inquiry" is less clear. There is no real evidence either within the wording of the statute or in the legislative history that may be considered conclusive in defining the rather amorphous phrase "medical inquiry". Basically, legislative history demonstrates that Congress enacted section 12112(d)(2) in order to "curtail all questioning that would serve to identify and exclude persons with disabilities from consideration for employment." *Griffin,* 160 F.3d at 594 (citing H. Rep. No. 101–

485(II), at 72–73, *reprinted in* 1990 U.S.C.C.A.N. at 355). Additionally, according to EEOC guidelines, a "disability-related question" is defined as "a question that is *likely* to *elicit* information about a disability." *Guidance Manual,* § 902:0072. The guidelines continue by stating, "if there are many possible answers to a question and only some of those answers would contain disability-related information, that question is not 'disability-related.'" *Id.* We agree with Ms. Green that this ban on medical inquiries at the pre-offer stage is designed to be a "prophylactic measure to prevent employers from even attempting to determine whether a job applicant [falls] within the protected classification of being disabled." *Br. in Supp. of Pl.'s Mot. for Partial Summ. J.,* 5. But, we agree with Defendant's assertion that a signature alone does not act to identify an individual with a disability or serve to determine the nature or severity of one's disability.

▮ We find that Joy Cone's Release Form does not come under the definition of a prohibited medical inquiry, as it does not ask any questions about an individual's medical history or her limitations. Additionally, the Form does not force a person to identify her disability, and Joy Cone does not profess to use the Form to garner this knowledge at the pre-offer stage. In fact, there is *no* evidence that Joy Cone intends to uncover information about an individual's disability or takes an individual's disability into consideration at the pre-offer stage.

It is well-established that Congress enacted the ADA to ensure that individuals with disabilities are evaluated for their skills and potential contributions to the businesses to which they apply. The statute was designed to completely take the medical element out of the pre-offer stages of employment procedures unless it relates

to the "ability of the applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2)(B). Thus, the purpose underlying section 12112(d) is to force employers to focus *completely* on an individual's qualifications and not her disabilities. Medical information may be alluded to at the pre-offer stage *only* in certain very specific circumstances. An employer may ask if an individual can perform the *essential* functions of the job if it is visibly unclear whether the person would be physically able to do so, and an employer may ask applicants to "self-identify" if the employer is participating in an affirmative action program. *Enforcement Guidance on Pre-Employment Inquiries Under the Americans with Disabilities Act,* Daily Labor Report (BNA) No. 290 § 902:0074. As the legislative history reflects, "This prohibition against inquiries regarding disability is *critical* to assure that bias does not enter the selection process." H.R.Rep. No. 191–485(II), 101st Cong., 2nd Sess., 73 (1990), *reprinted in* 1990 U.S.C.C.A.N., 355 (emphasis added). We find that Joy Cone's Release Form is consistent with these standards and thus is in line with the intent behind the ADA.

### b. The Release Form and the Opportunity To Access Medical Records

We find it troubling that signing the Release Form gives Joy Cone the *opportunity* to access an applicant's medical records in the pre-employment stage. In addition, Joy Cone's Release Form does not clearly specify that medical records will be accessed only after an offer of employment.

The Form is organized into two sections with the top portion pertaining to a physical examination, and the lower portion relating to medical records. The portion concerning physical examinations reads as follows:

*PHYSICAL EXAMINATION*

Applicant/Employee Consent

I understand that, after an offer of employment is made by Joy Cone Company, or at any time during my employment with the Company, I may be required to submit to and pass a physical examination in accordance with our policy. The Company reserves the right to designate the medical institution and licensed physician of its choice to conduct the examination. Expenses related to such examinations will be paid for by the Company. I further understand and agree that, when requested to do so by the Company, I will execute documents authorizing the Company to obtain, for its internal use, medical records and information pertaining to any physical examination.

I release and discharge the Joy Cone Company and any physician or medical institution which performs the physical examination from any claim of liability arising out of such examination or arising out of the release of any information or documents pertaining to such examination.

Applicant signature Date

*Aff. of Tracey Billings,* Ex. A.

The second half of the Release Form pertains solely to medical records. It is as follows:

*Authorization to Release
Medical Records*

To:_____

(Please print name(s) of your Health Care Provider and Physician(s). If you have no regular physician, list the names of any doctor/clinic/medical facility you have treated with **within the last 10–years.**)

I, _____ of
 (Name of Patient) (Address)

hereby authorize you to release all records *{hospital records, medical records, other medical data and information relating to treatment and care} provided to me. The information may be released to:

**Joy Cone Company**

**Attn: Personnel Dept.**

**3435 Lamor Road**

**Hermitage, PA 16148**

Date: _____

_____

 Patient's Signature

*{Not for Use for Drug, Alcohol or Mental Health Records or HIV–Related Information}

*Aff. of Tracey Billings,* Ex. A.

The "Physical Examination" portion of the Form mentions "medical records," but it does not clearly delineate Joy Cone's policy with regard to obtaining an individual's medical records. As we have previously noted, an employer may only access medical information about an applicant subsequent to extending a conditional offer of employment. 42 U.S.C. § 12112(d)(3). However, the Form does not specify that medical records will be accessed only *after* an offer of employment.

The "Medical Record" portion of the Form does not include any safeguard to prevent Joy Cone from executing the release prior to extending an offer of employment. The top portion refers to the time period "after an offer of employment is made ...," however, that portion concerns physical examinations only and specifically refers to the *future* execution of a release for medical records that pertain only to physical examinations.

In addition, the bottom portion is physically separated from the top and a sepa-

rate signature is required for each portion. By using two different headings and requiring two separate signatures, it is not obvious that the post-offer limitation specified for the physical examination also will be followed with regard to the applicant's medical records.

Thus, Joy Cone can obtain an individual's medical records immediately after the Form is signed and prior to an offer of employment. Although we do find this to be problematic, it is not a violation of the ADA unless and until an applicant's medical records are requested prematurely.

We note that there are other options for Joy Cone to use in its employment application process given its stated purpose behind requiring the Form to be signed so early in the application process. According to Joy Cone, it is for an applicant's own convenience to sign the Release Form during the application process in order to avoid a second trip to execute the Form after an offer of employment is made. *Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Compl. or in the Alternative for Summ. J.*, 2. Of course, once an offer of employment is made, the applicant must appear for the physical examination and could presumably execute the necessary forms at that time.

Despite the possibility for abuse of the Release by a premature inquiry by the company, there is no violation of the ADA.

### 2. Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Both parties in the instant case filed a motion for summary judgment on the issue of the ADA violation. Although summary judgment is typically rendered after discovery has taken place, the facts pertinent to a review of this issue

are not in dispute and neither party requests discovery in order to present "facts essential to justify the party's opposition," and the issue is ripe for decision under summary judgment. Fed.R.Civ.P. 56(f). Thus, this is a legal issue that should be resolved by the court and is not one where the dispute lies in the facts or the import of evidence. In short, we find that Plaintiff has not met her burden in this case, as she has not presented affirmative evidence to support her position that the employment practice of Defendant to include a Release Form in its application materials is a *per se* violation of the ADA. Thus, we deny Plaintiff's motion for partial summary judgment. We grant Joy Cone's Motion to Dismiss or in the Alternative for Summary Judgment on the issue of the ADA violation.

### C. Standing

Although we find that this case can be dismissed on the merits, we conclude in the alternative that Plaintiff does not have standing to bring this claim.

Ms. Green requests an injunction to require Joy Cone to discontinue its practice of including the Release Form with its application materials. *Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss the Compl. or in the Alternative for Summ. J.*, 5. She asserts that signing the Form allows Joy Cone to access the applicant's medical records prior to Joy Cone extending a conditional offer of employment. Thus, the resulting injury is that signing the Release Form creates the *possibility* that a particular applicant's disability will be uncovered before her qualifications are assessed and thereafter suffer discrimination on the basis of her disability. Plaintiff argues that she has standing to seek injunctive relief because Joy Cone continues its employment practice that violates the ADA. *Id.*

Ms. Green also requests pecuniary relief, claiming that she was injured because she was not offered employment with Joy Cone and has not received a response to her application for employment. *Id.* She argues that she needs additional time for discovery to establish that she has standing with respect to her claim for pecuniary relief. *Id.* at 6 and *Aff. of Gary F. Lynch, Esq. Pursuant to Fed.R.Civ.P. 56(f).*

We conclude that Ms. Green has not satisfied the elements of standing, and we deny her petition for discovery in order to establish standing for pecuniary damages.

We examine three components in analyzing whether a plaintiff has standing: The alleged injury, the existence of a causal connection between the injury and the defendant's conduct, and the redressability of the injury by a favorable result. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136.

### 1. Injury–In–Fact

The injury-in-fact test mandates that the plaintiff show injury to herself and not just injury to a "cognizable interest." *Sierra Club,* 405 U.S. at 734–35, 92 S.Ct. at 1366. Moreover, the injury must be "distinct and palpable" as opposed to "abstract" and must be "actual or imminent" and not "conjectural or hypothetical." *Whitmore,* 495 U.S. at 155, 110 S.Ct. at 1723 (citing *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206; *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); and *Lyons,* 461 U.S. at 101–02, 103 S.Ct. at 1664–65). Imminence in relation to standing has been defined as *"certainly* impending" and can *not* be established when "the plaintiff alleges only an injury at some indefinite future time." *Whitmore,* 495 U.S. at 158, 110 S.Ct. at 1725 (emphasis added) and *Lujan,* 504 U.S. at 564, n. 2, 112 S.Ct. at 2138. In requesting both injunctive and pecuniary relief, Plaintiff is claiming two types of injuries. Signing the Release Form authorizing Joy Cone to obtain her medical records is the injury for which Ms. Green requests an injunctive relief, while not being offered employment by Joy Cone constitutes the injury for which Ms. Green requests compensation.

### a. Injunction

■■■ "The purpose of an injunction is to prevent future violations." *Cheyenne Mountain,* 124 F.3d at 1230 (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953)). Thus, the party requesting an injunction must prove that there is a great likelihood that the defendant will continue its illegal practices or will violate the same provisions again.

Joy Cone acknowledges that it deliberately follows the employment practice that Ms. Green alleges is prohibited under the ADA. "Included in the material provided to applicants at the time they fill out their applications is a form regarding physical examinations that includes the applicant's consent to a post-offer physical examination and Authorization to Release Medical Records." *Aff. of Tracey Billings,* ¶ 4. In addition, Joy Cone has made no stipulation to discontinue the practice which forms the basis of Plaintiff's suit, and believes that it is complying with the ADA. "Joy Cone's use of the Release Form after it has made an offer to the signor of the Release Form is perfectly lawful under the ADA." *Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Compl. or in the Alternative for Summ. J.,* 6.

■■■ However, Ms. Green is unable to satisfy the "constitutional preconditions for asserting an injunctive claim in a federal forum" asserted by the Supreme Court, because she cannot show an injury-in-fact. *Armstrong,* 141 F.3d at 562–63 (citing *Lyons,* 461 U.S. at 109, 103 S.Ct. at 1669). The Supreme Court held that the plaintiff

must "show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged ... conduct." *Armstrong,* 141 F.3d at 563 (quoting *Lyons,* 461 U.S. at 102, 103 S.Ct. at 1665).

We disagree that an applicant for employment is "immediately in danger" of Joy Cone accessing her medical records before she has been extended a conditional offer of employment simply because she has signed the Release Form. The Release Form states on its face that it will not be executed until *after* an offer of employment. The Supreme Court has explained that "the injury or threat of injury must be both real and immediate, not [merely] conjectural or hypothetical." *Id.* Joy Cone asserts that it rejected Ms. Green for employment after the initial screening process and did not contact the physician Ms. Green named on the Release Form to obtain her medical records. *Aff. of Tracey Billings,* ¶¶ 5, 7. We conclude that the injury alleged by Ms. Green is "conjectural" or "hypothetical" since there is no determinative evidence that Joy Cone accessed Ms. Green's medical records, or even attempted to access them. Ms. Green has put forward no evidence to dispute Joy Cone's claim that it did not request her medical records from the physician Ms. Green named on the Release Form. We note that Ms. Green could have discovered this information by simply asking her doctor if Joy Cone attempted to, or did in fact, access her medical records. There is no evidence that Ms. Green has even made this inquiry. We thus find that Plaintiff cannot establish an injury-in-fact and therefore lacks standing to bring this action.

### b. Pecuniary Relief

■ Ms. Green also seeks pecuniary relief, claiming that she was not offered employment by Joy Cone and that she "has not received a response to her application for employment." *Compl.,* ¶ 19. According to the affidavit of Tracey Billings, Joy Cone's Personnel Manager, Ms. Green was not chosen to advance in the hiring process beyond an initial screening of her application for employment, and her medical records were never requested from the physician named on the Form. *Aff. of Tracey Billings,* ¶¶ 5, 7. Thus, Joy Cone alleges that Ms. Green was rejected for employment before it accessed her medical records or required her to appear for a physical examination.

In accordance with 42 U.S.C. § 2000e–5(g)(2)(A), the Court generally may not order the grant of back pay to an individual who "was refused employment ... for any reason other than discrimination." Since Ms. Green is not claiming to have been discriminated against on account of a disability, the issuance of back pay is inappropriate under the law. Furthermore, if the defendant can show that it would have taken the same action despite the violation, the court "may grant declaratory relief, injunctive relief ... and attorney's fees and costs ... and shall not award damages or issue an order requiring ... payment." 42 U.S.C. § 2000e–5(g)(2)(B)(i) and (ii).

Ms. Green's argument is based upon the notion that she would have been offered employment with Joy Cone but for her signature on the Release Form. She seeks pecuniary relief claiming that Joy Cone unlawfully denied her employment in violation of the ADA. Ms. Green offers no evidence to support her speculative claim that she was denied employment based on the Form. Ms. Green has always had the power to discover whether Joy Cone ever attempted to access her medical records simply by asking her doctor. Ms. Green has not offered such evidence and does not suggest that her request to extend discov-

ery is for the purpose of making such an inquiry to her own doctor. We conclude that pecuniary damages are not warranted in this case, and therefore that Ms. Green lacks standing to assert her claim for pecuniary relief.

### 2. Causation

 As with the analysis of injury, we find too conjectural the element of causation both with respect to Ms. Green's prayer for an injunction, and her request for pecuniary damages.

The United States Court of Appeals for the Fifth Circuit has ruled that an applicant must show "some cognizable injury-in-fact of which the violation is a legal and proximate cause for damages to arise from a single violation." *Armstrong*, 141 F.3d at 562. The *Armstrong* court found the lack of causation required dismissal of the suit, stating: "In sum, the court below concluded that the information revealed by the unlawful medical inquiry did not lead [Defendant] to deny [Plaintiff] employment 'because of disability,' but rather because of the perception that he 'did not truthfully answer the questions on the form.' " *Id.* at 560, n. 15 (quoting *Armstrong*, 950 F.Supp. at 165). Additionally, the Tenth Circuit stated that "before the plaintiff can prevail he must prove injury flowing from [the ADA violation]." *Griffin*, 160 F.3d at 595, n. 5. Thus, there must be a concrete "causal link" between the alleged ADA violation and the damages sought. *Buchanan*, 85 F.3d at 200. Additionally, it is important to note that the element of causation does make up one component in the determination of standing in *all* causes of action under the ADA. As the Fifth Circuit articulated:

> It appears that [Plaintiff] implicitly argues (or assumes) that a violation of section 12112(d)(2)(A) constitutes a compensable injury-in-fact. We reject this

reading of the provision. This Court has been unable to find any indication either in the text of the ADA or in its legislative history that a violation of the prohibition against preemployment medical examinations and inquiries, in and of itself, was intended to give rise to damages liability . . . Consequently, we hold that damages liability under section 12112(d)(2)(A) must be based on something more than a mere violation of that provision.

*Armstrong*, 141 F.3d at 561–62.

Even assuming that Joy Cone's use of the Form in its application materials is a *per se* violation of the ADA, Ms. Green still cannot show that such a violation gives rise to any injury.

### 3. Redressability

The redressability of the injury by a favorable result, the third element of standing, does not merit a lengthy analysis, as the record does not indicate any evidence that would provide new insight into the examination of Plaintiff's standing to file the claim. In short, it appears that the affidavits submitted by both parties suggest that a ruling in favor of Ms. Green on the merits would not redress her injury of not being hired by Joy Cone. Although the grant of an injunction prohibiting Joy Cone from including the Release Form in application materials would remedy the injury of the *potential* premature discovery of the existence or the nature of a disability, we have already determined that this alleged injury is too hypothetical under the facts of this case.

### 4. Summary Judgment

As stated above, we conclude that Plaintiff has not met her burden in this case, as she had not proven by affirmative evidence that she has met the constitutional requirements for standing. We find that the

Defendant has satisfied its initial burden for summary judgment by showing that Ms. Green can not establish an injury-in-fact or a causal link in relation to her complaint. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Since injury-in-fact and causation are essential elements of standing in accordance with Supreme Court precedent, a lack of affirmative evidence proving that Ms. Green has a cause of action under the law is sufficient to grant the motion for summary judgement. *Armstrong,* 141 F.3d at 562–63 (citing *Lyons,* 461 U.S. at 109, 103 S.Ct. at 1669). In her brief in opposition to defendant's motion, Ms. Green attempted to set forth evidence to counter Joy Cone's arguments, however, we find it to be unpersuasive. *See* Fed.R.Civ.P. 56(e).

Additionally, we decline to grant Ms. Green's request for additional time for discovery. As argued by Joy Cone, we find that the affidavit submitted by Ms. Green does not satisfy the standard delineated in Federal Rule 56(f) in order to grant a continuance for discovery. *Reply Br. in Supp. of Def.'s Mot. to Dismiss the Compl. or in the Alternative for Summ. J. and in Opp'n to Pl.'s Mot. For Partial Summ. J.,* 12–14. Specifically, we conclude that the affidavit does not provide reasoning to substantiate her request nor does she specify the facts she intends to discover in order to effectively oppose Defendant's motion. *Aff. of Gary F. Lynch, Esq. Pursuant to Fed.R.Civ.P. 56(f).* As we have noted, Plaintiff has had the opportunity to determine if her medical records were requested by Joy Cone since initiation of the suit. Consequently, we grant Joy Cone's Motion to Dismiss or in the Alternative for Summary Judgment on the issue of standing.

## V. *CONCLUSION*

We conclude that Plaintiff has no claim against Defendant, as Joy Cone's Release Form does not constitute a *per se* violation of the ADA and thus summary judgment is appropriate. In addition, we find that Ms. Green cannot satisfy the constitutional prerequisites of standing, and therefore cannot pursue her claim against Defendant in court.

An appropriate Order will be entered.

## *ORDER*

AND NOW, to-wit, this *21st* day of August, 2003, after careful consideration and for the reasons set forth in the Opinion accompanying this Order, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Defendant Joy Cone Company's Motion to Dismiss the Complaint, or in the Alternative for Summary Judgment (Doc. 4), treated as a motion for summary judgment, be and hereby is GRANTED; Summary Judgment as a matter of law is GRANTED in favor of Defendant and against Plaintiff.

2. Plaintiff Brenda Green's Motion for Partial Summary Judgment (Doc. 9) is DENIED.

3. The Complaint is dismissed and the Clerk of Courts be and hereby is directed to mark this case closed.